**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| v. | § | **Case No. 6:12-cv-22** |
| | § | |
| **ALCATEL-LUCENT USA, INC.** and | § | |
| **AT&T MOBILITY LLC** | § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| v. | § | **Case No. 6:12-cv-122** |
| | § | |
| **ALCATEL-LUCENT USA, INC.** and | § | |
| **CELLCO PARTNERSHIP d/b/a VERIZON** | § | |
| **WIRELESS** | § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| v. | § | **Case No. 6:12-cv-123** |
| | § | |
| **ALCATEL-LUCENT USA, INC.** and | § | |
| **SPRINT SPECTRUM, L.P.** | § | |

## ORDER

The above-referenced cases were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Before the Court is the following pending motion: Defendants' Motion to Transfer Venue Under 28 U.S.C. §1404(a) (Docket Entry #s 96, 82 & 73). The Court, having carefully considered the parties' relevant briefing, is of the opinion the motion should be **DENIED**.

I. BACKGROUND

Plaintiff Adaptix, Inc. ("Adaptix") filed its complaint in Case No. 6:12-cv-0022 on January 13, 2012, alleging infringement of U.S. Patent Nos. 7,146,172, 6,870,808, 7,573,851, 6,904,283, and 7,072,315 (collectively "the patents-in-suit") against five separate defendants. Adaptix voluntarily dismissed Defendants Verizon and Sprint on March 13, 2012 and re-filed claims against ALU and Verizon (Case No. 6:12-cv-0122) and ALU and Sprint (Case No. 6:12-cv-0123). Adaptix voluntarily dismissed Defendant AT&T Inc. from Case No. 6:12-cv-0022 on March 23, 2012. The complaints allege that Alcatel-Lucent USA, Inc. ("ALU") makes and sells 4G LTE devices incorporating RAN technology that infringe the patents-in-suit and that AT&T Mobility LLC ("AT&T"), Cellco Partnership d/b/a Verizon wireless ("Verizon"), and Sprint Spectrum, L.P. ("Sprint") purchased and used the accused products from ALU.

ALU, AT&T, Verizon, and Sprint ("Defendants") move to transfer the above cases to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Adaptix opposes transfer and urges that Defendants cannot show the District of New Jersey is a clearly more convenient forum.

Adaptix is a Delaware corporation headquartered in Collin County in this district. (Dodd Decl. at ¶3). Adaptix's parent company, Acacia Research Group, maintains its headquarters in Plano, Texas. (Ercolini Decl., Ex. A-1). Defendant ALU is a Delaware corporation with its principle place of business in Murray Hill, New Jersey. (Zucker Decl. at ¶ 4). ALU designed and developed the RAN technology that was incorporated into the accused products in Murray Hill, New Jersey; Naperville, Illinois; Nozay, France; and China. (*Id.* at ¶ 5). Although ALU also employs over 2,000 people at a Plano, Texas facility, ALU asserts it has no research and development facility or technical witnesses related to RAN technology in this district. (*Id.* at ¶ 6).

Defendant AT&T is a Delaware company headquartered in Atlanta, Georgia. (Caine Decl. at ¶ 2). AT&T maintains testing facilities in New York and New Jersey (*Id.* at ¶ 6). According to Adaptix, AT&T also has two research "foundries" in Plano, Texas. Defendant Verizon is a Delaware general partnership headquartered in Basking Ridge, New Jersey. (Stone Decl. at ¶ 3). Verizon has conducted testing of its LTE network and the accused ALU base stations in New Jersey and currently deploys and uses the accused ALU base stations in Verizon's LTE network in New Jersey. (*Id.* at ¶ 6). According to Adaptix, Verizon has facilities located in Southlake, Texas and Westlake, Texas, both less than five miles from this district.

Defendant Sprint is a Delaware Limited Partnership headquartered in Overland Park, Kansas. The vast majority of Sprint's relevant witnesses and documents are located in Kansas and Virginia. (Sill Decl. at ¶¶ 2, 4). Sprint does not use any ALU 4G LTE base stations (the accused products) in the Eastern District of Texas or anywhere else in Texas. (*Id.* at ¶6). Sprint does use ALU's 4G LTE base stations in New Jersey. (*Id.* at ¶7).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II)*. Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314.

Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred. *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The relevant factors are divided between these private and public interests. *Gilbert*, 330 U.S. at 508. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

## II. DISCUSSION

### A. *Jurisdiction in the Transferee Forum*

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit originally could have been filed in the destination venue. *Volkswagen II*, 545 F.3d at 312. The movants bear the burden of establishing personal jurisdiction and venue as to all defendants in the transferee forum. *See Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). This determination is made as the circumstances existed at the time of filing. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The relevant inquiry is whether jurisdiction and venue existed at the time this action was filed. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Thus, post-filing consent to jurisdiction in the transferee forum is irrelevant to the transfer analysis. *Id.*

According to Defendants, Adaptix could have filed these cases in the District of New Jersey. Adaptix does not dispute venue would be proper in the District of New Jersey. Therefore, the threshold determination is satisfied.

**B.**     *Private Interest Factors*

   **1.**  **The Relative Ease of Access to Sources of Proof**

The first private interest factor is the relative ease of access to sources of proof. This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of documents and other evidence. *In re Genentech, Inc.*, 566 F.3d 1338, 1345–46 (Fed. Cir. 2009). However, documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue. *See Volkswagen II*, 545 F.3d at 316.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am.*

*Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (explaining that a corporate party's relevant discoverable material is generally located at its headquarters).

Defendants assert the District of New Jersey is a more convenient forum for access to relevant documents. According to Defendants, all of ALU's United States-based research and development related to RAN technology was conducted in research facilities in Murray Hill, New Jersey or Naperville, Illinois. (Zucker Decl. at ¶ 5). Thus, Defendants assert all of the "sources of proof" from ALU relating to infringement or validity of the patents-in-suit are located in New Jersey or Illinois.

According to Defendants, AT&T maintains testing facilities in New York and New Jersey, which is one of the most important areas for testing and research for the deployment of Alcatel-Lucent products by AT&T. (Caine Decl. at ¶ 6). Defendants contend the vast majority of Verizon's potentially relevant witnesses and documents are located in New Jersey and California. (Stone Decl. at ¶¶ 4-5). Verizon has conducted testing of its LTE network and the accused ALU base stations in New Jersey and currently deploys and uses the accused ALU base stations in Verizon's LTE network in New Jersey. (*Id.* at ¶ 6). Sprint is a Delaware Limited Partnership headquartered in Overland Park, Kansas. The vast majority of Sprint's relevant documents are located in Kansas and Virginia. (Sill Decl. at ¶¶ 2, 4).

While Defendants point to New Jersey as the location for some sources of proof, they ignore other sources of proof which originate from other locations. Defendants have places of business in a number of the aforementioned locations, so any additional sources of proof are likely to originate from these same locations. Unlike *Volkswagen II* and *TS Tech,* here all of the documents and physical evidence are not located in and around the destination venue. *See Volkswagen II,* 545 F.3d at 316 ("[a]ll of the documents and physical evidence ... are located in

the [destination venue], as is the collision site"); *TS Tech,* 551 F.3d at 1321 ("all of the physical evidence, including the headrests and the documentary evidence, are far more conveniently located near the [destination] venue").

With respect to the sources of proof related to Adaptix, Defendants gloss over the relevant evidence either within or near this district.  According to Adaptix, all of its servers, and all of its electronic documents, are located in this district.  While transferring this case to the District of New Jersey would make access to some sources of proof easier, there is important evidence that would not be more convenient to access.  The Court finds this factor neutral.

### 2. The Availability of Compulsory Process

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337–38.

Under Federal Rule of Civil Procedure 45, a court has power to compel trial testimony if the witness is served: (1) within the district; (2) within 100 miles of the courthouse; or (3) within the state of the issuing court. FED. R. CIV. P. 45(b)(2)(A)–(C). *But see* FED. R. CIV. P. 45(c)(3)(B)(iii) & 45(c)(3)(C) (limiting a court's authority to compel a non-party witness to travel more than 100 miles to testify at trial, unless there is a "substantial need for the testimony" and the witness is reasonably compensated). A court can compel deposition testimony of a non-party witness within 100 miles of his home or workplace. *See* Rule 45(c)(3)(A)(ii).

In their motion, Defendants identified eight prior art witnesses allegedly within the subpoena power of the transferee district.  However, Adaptix argues five of the eight are either party witnesses or are not subject to compulsory process in New Jersey.  In addition, Adaptix has

identified several nonparty witnesses within the Eastern District of Texas' subpoena power: (1) Ross Viguet, prosecuting attorney for the patents-in-suit at Norton Rose in Dallas (Ercolini Decl., Exs. 50, 51, 52, and 53); (2) Robert Greeson, also prosecuting attorney at Norton Rose in Dallas (*Id.*, Ex. A-54); (3) former Adaptix CEO Mike Pisterzi (*Id.*, Ex. A-55, A-56, and A-57); (4) Richard Xu, former Adaptix VP of China Operations (currently with Huawei – Plano) (*Id.*, Ex. A-58 and A-59); and (5) Jonathan Down, former Sales Engineer for Adaptix (Little Elm, Texas). Considering each district has absolute subpoena power over some witnesses, the Court finds this factor is neutral.

### 3. The Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (per curiam) (*Volkswagen I*) (requiring courts to "contemplate consideration of the parties and witnesses"). Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses. *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146, *6 E.D. Tex. 2010).

The Fifth Circuit applies a 100-mile rule to assist in the analysis of this factor. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05; *see In re TS Tech*, 551 F. 3d at 1320. The greater distance witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See id.*

As a threshold matter, the District of New Jersey and the Tyler Division of the Eastern District of Texas are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses having to travel to one venue versus the other.

As noted above, ALU has a sales presence, but no research and development facility or technical witnesses related to RAN technology, in this district. According to ALU, the relevant witnesses regarding ALU's design and development of RAN technology are primarily located in New Jersey, Illinois, or overseas, with the majority of ALU personnel with knowledge of ALU's research and design of ALU's RAN technology being employed at ALU's Murray Hill, New Jersey location. The majority of AT&T's employees knowledgeable about the technical subject matter of this litigation are located in Redmond, Washington. The "vast majority" of Verizon's relevant witnesses are located in New Jersey and California, and the vast majority of Sprint's relevant witnesses are located in Kansas and Virginia. According to Defendants, it would be significantly more convenient, in terms of travel cost and time, for these witnesses to travel to the District of New Jersey for trial.

Defendants argue for transfer based on vague assertions that the "vast majority" of relevant witnesses are located in either New Jersey or another district without providing the respective apportionment of each.  Regarding ALU, which is headquartered in New Jersey, Defendants contend most of ALU's domestic witnesses regarding the design and development of RAN technology are located in New Jersey, but they fail to clarify the identity of those witnesses or the breakdown between ALU's foreign and domestic witnesses.  Defendants also fail to address ALU's substantial presence in Plano, specifically as it relates to the accused technology or ALU's employees working there.  According to Adaptix, ALU employs over 2000 employees in Plano, including an expert advanced technology team and a branch of ALU University, whose

professors teach courses on the accused technology, as well as the Senior Vice President for all sales of the accused technology to AT&T and the Director and Leader of ALU's Wireless RF Program for the accused technology.

Adaptix further asserts Verizon has witnesses with relevant knowledge in and around this district. Defendants have failed to offer any substantive argument on behalf of AT&T's unnamed witnesses and Sprint's witnesses. Finally, the Court notes this district is more convenient for witnesses for Adaptix, whose headquarters are in Carrollton. In sum, the Court cannot say a greater number of party witnesses in this case would find the District of New Jersey a clearly more convenient venue. Accordingly, this factor weighs against transfer.

### 4. All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *See, e.g.*, *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). And judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010). Generally, other practical problems focus on issues of judicial economy. Particularly, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).

Adaptix asserts Defendants' delay in filing their motion to transfer should be a sufficient basis for denial because such delay will cause prejudice to Adaptix if the motion is granted.

Defendants contend there is no evidence that any delay in bringing the instant motion has caused prejudice to Adaptix. Unlike a Rule 12 motion based on improper venue, §1404(a) sets no time limit for bringing a motion to transfer thereunder. *Konami*, 2009 WL 781134, at *7. The Fifth Circuit Court of Appeals has held that a motion to transfer venue under §1404(a) should be made with "reasonable promptness." *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989). Therefore, if the party opposing transfer can show that the §1404(a) transfer motion would result in prejudice solely due to the delay in bringing the motion or that the motion is a dilatory tactic, then the movant has failed to show "reasonable promptness." *Konami*, 2009 WL 781134, at *7.

Here, Defendants waited 20 months after Adaptix's original complaint was filed to seek transfer. The parties have served infringement contentions and exchanged documentary evidence. Also, there are three additional consolidated cases involving the same patents-in-suit and the same claims before the Court (Case Nos. 6:12cv369, 6:13cv49, and 6:13cv50). All six cases have been set for claim construction hearing February 13, 2014. Transferring these cases now would prejudice Adaptix because it would lose its *Markman* and trial dates currently set. Although Defendants assert their motion was motivated by Judge Schneider's March 28, 2013 orders transferring several *Adaptix* cases to California, Defendants do not explain why they waited another four months before filing the current motion. Not only would Adaptix be prejudiced if these cases were transferred at this late date, but the Court also finds judicial economy weighs against transfer.

C.   *Public Interest Factors*

   1.   **The Administrative Difficulties Flowing From Court Congestion**

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. Of all the venue factors, this is the "most speculative." *Id.* When "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Here, Defendants contend this factor is neutral, while Adaptix maintains it weighs against transfer. Although Adaptix claims a patent case takes longer to proceed to trial in the District of New Jersey, this factor appears to be the most speculative. Accordingly, the Court finds this factor is neutral.

   2.   **The Local Interest in Having Localized Interests Decided at Home**

The next public interest factor is the local interest in adjudication of the case. Traditionally, the location of the alleged injury is an important consideration. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp.2d 859, 872 (E.D. Tex. 2012) (citing *In re TS Tech*, 551 F.3d at 1321). When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1336. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp.*, 330 U.S. at 508–09).

New Jersey has an interest in adjudicating this dispute regarding products and technology developed in New Jersey, sold by a New Jersey company, and used by Defendants in New Jersey. However, as noted above, Defendants ALU, Verizon, and AT&T either employ people within the Eastern District of Texas or within five miles of this district. Importantly, Adaptix is headquartered in this district, and its parent company is headquartered in this district. Adaptix employs several people there. Finally, Adaptix's licensees of the patents-in-suit, Samsung and NSN, are also residents of this district. The Court finds the Eastern District of Texas' interest in this litigation is extremely significant. Considering the balance of these facts, the Court finds this factor weighs against transfer.

### 3. The Familiarity of the Forum With the Governing Law

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court notes that both the District of New Jersey and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See In re TS Tech*, 551 F.3d at 1320. Accordingly, as the parties agree, this factor is neutral.

### 4. The Avoidance of Unnecessary Problems of Conflict of Laws

The parties acknowledge that this case does not present conflict of laws issues. Thus, this factor is neutral.

### III. CONCLUSION

Having fully considered all of the private and public interest factors, Defendants have not met their burden to show that the District of New Jersey is "clearly more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315. Accordingly, Defendants' motion to transfer is **DENIED**.

**It is SO ORDERED.**

**SIGNED this 8th day of January, 2014.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE