**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:12-cv-22** |
| **ALCATEL-LUCENT USA, INC. , ET AL.** | § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:12-cv-122** |
| **ALCATEL-LUCENT USA, INC. , ET AL.** | § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:12-cv-123** |
| **ALCATEL-LUCENT USA, INC. , ET AL.** | § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:13-cv-49** |
| **ERICSSON INC., ET AL.** | § § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:13-cv-50** |
| **ERICSSON INC., ET AL.** | § § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| v. | § § | **CASE NO. 6:12-cv-369** |
| **T-MOBILE USA, INC.** | § § | |

**DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

In its reply brief, Adaptix mischaracterizes two references (the *Shad* reference and the *Farsakh* '237 Patent) attempting to support its construction for the "spatial signature" claim terms in the '808 Patent.  *See* Rep. Br. at 13-15.  Adaptix never identified either of these references in its 4-3 statement or its opening claim construction brief.  Recognizing that sur-reply briefs are submitted only in limited circumstances, Defendants respectfully submit this sur-reply brief to address Adaptix's mischaracterizations of these previously uncited references.

A. **Adaptix makes multiple incorrect statements about the teachings of *Shad*.**

As Defendants showed in their responsive briefing, a "spatial signature" recited in the '808 Patent means the relative complex gains of transmitted signals received by an antenna array.  Defs.' Br. at 32-39.  Importantly, the spatial signature of a *subscriber* (the claimed phrase) is different than the spatial signature of a *base station*.  As used in the art and in the '808 Patent, the spatial signature *of a subscriber* results from the signal transmitted by the subscriber and received by the base station, and the spatial signature of a base station results from the signal transmitted from a base station and received by the subscriber.  *Id.* at 41-43.  It follows then, that the base station's *receiving* antennas are the antennas relevant to the *subscriber's* spatial signatures (which is the disputed term in the patent).  Adaptix misreads *Shad* to say that instead the *transmitting* antennas are the ones relevant to the subscriber's spatial signature.

The confusion stems from the word "station" in the *Shad* reference.  *Shad* discusses "portable stations" and "basestations," which mean subscribers and base stations, respectively.  *Shad* sometimes refers to "portable stations" as "mobile stations" or just shortens "portable stations" to "stations."  Rep. Br., Ex. 19, at 868, Abstract ("In this paper we consider the capacity of a set of *portable stations* sharing a single indoor radio channel.  The *stations* communicate with a *basestation* which is equipped with a smart antenna) and *id.* at Introduction (first sentence) ("In many wireless systems, *mobile stations* communicate through a *basestation* which is attached to a wired network.").  Regardless, it is clear that when *Shad* says "station," it is referring to the entity communicating with the base station, not the base station itself.  Therefore,

when *Shad* discusses "station signatures," it is referring to signatures of subscribers, which is the disputed term in the '808 patent.

Adaptix argues the opposite—that when *Shad* discusses "station signatures" it is describing the *transmitting antennas* of a basestation. *See* Rep. Br. at 14 ("This information is provided for each base station antenna."). But as discussed above, "station signatures" means subscriber signatures. Further, the transmitting antennas of a base station are related to the base station's signatures, not the subscriber's. It is the base station's *receiving* antennas that would be used to measure the subscribers' spatial signatures. Def. Br. at 41-43. The description of "station signatures" in *Shad* refers to *subscribers* and is entirely consistent with both the specification of the '808 patent and Defendants' construction. *Compare* Rep. Br., Ex. 19, at 869 *with* '808 Patent at 5:10-12. Adaptix's argument that *Shad* describes base station signatures and that those signatures are relevant to the claim term at issue – subscriber signatures – is meritless.

*Second*, Adaptix argues that Defendants' construction of "spatial signatures" is incorrect because *Shad* describes spatial signatures that may be formed from multiple vectors. This argument is, again, based on a clear misreading of *Shad*. As described in *Shad*, the spatial signatures of subscribers are represented as vectors "v." The subscript following the vector "v" indicates which subscriber the vector describes. Thus, $v_d$ is the spatial signature of the "desired" subscriber, while $v_i$ is the spatial signature of the $i^{th}$ "interfering" subscriber. Rep. Br., Ex. 19, at 869. Adaptix appears to believe that the unique spatial signature vectors just described are both describing a single subscriber in *Shad*, and that therefore the spatial signatures may be more complex than construed by Defendants. As described, Adaptix misreads the plain language of *Shad*. $v_d$ is the spatial signature of the "desired" subscriber and $v_i$ is the spatial signature of the interfering subscribers. These spatial signature vectors represent different subscribers and therefore cannot, as Adaptix argues, show that spatial signatures come in various forms.

*Last*, Adaptix suggests that the spatial signatures described by *Shad* do not include "relative complex gains between the base station antennas." Rep. Br. at 14-15. But this is *directly contrary* to the disclosure in *Shad*. *Shad* repeatedly describes the components of the

2

spatial signatures as complex. Rep. Br., Ex. 19, at 870 ("As a result, the components of each received station signature vector, $v_d$ are independent *complex* Gaussian variates.") *see also id.* at 871 (describing station signatures as "*complex* vector signatures").

### B. Adaptix misrepresents the teachings of *Farsakh*.

Adaptix contends that a spatial signature may be represented in terms of a "spatial covariance matrix" disclosed in *Farsakh*. Because of this relationship, Adaptix appears to argue that Defendants' construction of spatial signature must include or be consistent with a spatial covariance matrix. Rep. Br. at 14. This argument fails as a matter of simple logic – a spatial covariance matrix is not a spatial signature, so it matters not whether Defendants' construction is in harmony with it. A spatial signature and spatial covariance matrix are shown in equation (7).

An anticipated value can thus be determined for the spatial covariance matrix

$$C_k = \sum_{q1=1}^{Qk} \sum_{q2=1}^{Qk} \tilde{a}_{kq1} \tilde{a}_{kq1}^H \tilde{b}_{kq1}^* \tilde{b}_{kq2} = r_k r_k^H \quad (7)$$

whereby $r_k$ indicates a spatial signature for a communication connection k, k=1 . . . K.

The spatial covariance matrix described by *Farsakh* is denoted by the symbol $C_k$, while the spatial signature is denoted by the symbol $r_k$. Rep. Br. at 14. The relationship between $C_k$ and $r_k$ is $C_k = r_k r_k^H$. At this point, it is clear that the spatial signature ($r_k$) is not the same as the spatial covariance matrix ($C_k$) and that Adaptix's argument must fail. To explain the equation further, the superscript H is a linear algebra symbol denoting a matrix operation on complex matrices called a conjugate transpose.[1] A conjugate transpose requires transposing the matrix and then taking the complex conjugate of each entry. A spatial covariance matrix then, according to *Farsakh*, is obtained by multiplying the spatial signature vector by its complex conjugate transpose.[2] The spatial signature is used to calculate the spatial covariance matrix, but this does not imply, as Adaptix assumes, that they are equivalent or that a construction of spatial signatures must also be a construction for spatial covariance matrix.

---

[1] *See, e.g.,* Wolfram Mathworld, Conjugate Transpose, http://mathworld.wolfram.com/ConjugateTranspose.html; Wikipedia, Conjugate Transpose, http://en.wikipedia.org/wiki/Conjugate_transpose.
[2] The fact that a vector has a *complex* conjugate transpose necessarily means that it includes *complex* numbers.

Dated: January 15, 2014

Respectfully submitted,

/s/ David A. Nelson
David A. Nelson
Stephen Swedlow (*pro hac vice*)
Thomas Cushing (*pro hac vice*)
Robyn Bowland (*pro hac vice*)
Marc Kaplan (*pro hac vice*)
QUINN EMANUEL URQUHART &
　SULLIVAN
500 West Madison
Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Fax: (312) 705-7499
davenelson@quinnemanuel.com
stephenswedlow@quinnemanuel.com
thomascushing@quinnemanuel.com
robynbowland@quinnemanuel.com
marckaplan@quinnemanuel.com

Michael E. Jones
POTTER MINTON PC
110 North College, Suite 500
PO Box 359
Tyler, Texas 75710-0359
Telephone: (903) 597-8311
Fax: (903) 593-0846

ATTORNEYS FOR ALCATEL-
LUCENT USA INC. AND AT&T
　MOBILITY LLC

/s/ Geoffrey M. Godfrey
Mark D. Flanagan
Robert M. Galvin
Geoffrey M. Godfrey
**WILMER CUTLER PICKERING**
**HALE & DORR LLP**
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858-6000
Fax: (650) 858-6100
Mark.Flanagan@wilmerhale.com
Robert.Galvin@wilmerhale.com
Geoff.Godfrey@wilmerhale.com

Michael E. Jones
Texas State Bar No. 10929400
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, TX 75710-0359
Tel: (903) 597-8311
mikejones@potterminton.com

**ATTORNEYS FOR CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS**

/s/  Mark W. McGrory
Mark W. McGrory
Lawrence A. Rouse
**ROUSE HENDRICKS GERMAN MAY PC**
1201 Walnut Street
Suite 2000
Kansas City, MO 64106
Tel:  (816) 471-7711
Fax:  (816) 471-2221

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**ATTORNEYS FOR DEFENDANTS SPRINT SPECTRUM L.P.**

**CERTIFICATE OF SERVICE**

I certify that on the 15th day of January, 2014, all counsel of record were served with a copy of this document via the Court's electronic case filing system.

>*/s/ Robyn Bowland*
>Robyn Bowland