# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ADAPTIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALCATEL-LUCENT USA, INC. and AT&T MOBILITY LLC, <br><br> Defendants. | Civil Action 6:12-cv-0022 |
| ADAPTIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALCATEL-LUCENT USA, INC. and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> Defendants. | Civil Action 6:12-cv-0122 |
| ADAPTIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALCATEL-LUCENT USA, INC. and SPRINT SPECTRUM L.P., <br><br> Defendants. | Civil Action 6:12-cv-0123 |

**DEFENDANT ALCATEL-LUCENT USA, INC.'S
REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL
DOCUMENTS FROM THIRD PARTY ACACIA RESEARCH GROUP, LLC**

Acacia does not dispute that: (a) it has a discovery obligation arising from ALU's subpoena; and (b) that it possesses responsive documents. The sole question here is whether Acacia has complied with its obligation even though it admittedly has not produced a single page—and it admittedly has made no effort to review its documents for responsiveness or privilege.

Acacia argues that it has satisfied its discovery obligations to ALU by providing its documents to Adaptix, ALU's litigation opponent. It reasons that Adaptix probably has produced (or eventually will produce) to ALU the documents that Acacia provided it, but makes no guarantee that its subsidiary has done so (or will do so). In effect, Acacia seeks to transfer its discovery obligations to Adaptix. There are many problems with Acacia's argument, but two stand out.

First, Acacia may transfer its documents to Adaptix, but it cannot transfer its legal obligation to respond to proper discovery requests. It cannot rely upon Adaptix as its proxy or agent, but then disclaim responsibility for Adaptix's discovery failures. By stating that "Adaptix has reviewed these [Acacia] documents and has produced, *or soon will produce*, responsive ones to ALU,"[1] Acacia appears to concede one of two things; either: (a) Adaptix, more than two and a half years into the litigation (and just weeks before the July 11 discovery cutoff), *still* has not produced all responsive Acacia documents to ALU; or (b) Acacia *does not know* what Adaptix has produced.[2] Either way, Acacia breached its discovery obligations by handing off documents

---

[1] Third Party Acacia Research Group LLC's Opposition to Emergency Motion of Defendant Alcatel-Lucent USA, Inc. To Compel Documents From Third Party Acacia Research Group, LLC ("Acacia Opp. Br.") at 1 (emphasis added).

[2] In its brief, Acacia states that it produced 60,000 "potentially responsive" documents, and yet Acacia also states Adaptix produced or is producing only 11,000 of these documents. Acacia Opp. Br. at 2. Adaptix's privilege log does not reflect the balance of these Acacia documents. And no one has explained why Adaptix has failed to produce the remaining Acacia documents.

to its litigation proxy, while failing to ensure that the proxy made a complete and timely production. ALU asked Acacia repeatedly to verify that Adaptix *in fact* had produced all of the Acacia documents that ALU had requested. Acacia was unwilling or unable to do so,[3] which is exactly why this motion is now before this Court.

Second, Acacia is not a disinterested third party that is entitled to special deference. It purchased Adaptix to monetize the Adaptix patent portfolio through these litigations. It cannot claim that it is entitled to the special protection that courts provide to disinterested third parties in discovery disputes. Having instigated these litigations for its own profit, Acacia cannot demand the court's protection from the burden of performing a simple document review.

## ARGUMENT

Acacia contends that ALU's request is unnecessary because *Adaptix* (not ALU) has access to the Acacia documents. But Acacia cannot verify that Adaptix *in fact* produced these documents to ALU and will not force Adaptix to do so. Moreover, Acacia seems to acknowledge that Adaptix *still* has yet to produce responsive Acacia documents:

> "Adaptix has reviewed these [Acacia] documents and has produced, *or soon will produce*, responsive ones to ALU."

Acacia Opp. Br. at 1 (emphasis added).

> "ALU . . . is already in possession, *or will very soon be in possession*, of any responsive materials by virtue of Adaptix's production.

Acacia Opp. Br. at 5 (emphasis added). Acacia seems to argue that ALU should be patient, because it will get the Acacia documents "soon." But this lawsuit has been pending for more than two and a half years, and the July 11 discovery cutoff is only three weeks away. The Acacia 30(b)(6) deposition is this week. Acacia's assurance that Adaptix will provide ALU with

---

[3] See Ex. A at 2, attached to ALU's Emergency Motion to Compel Documents from Third Party Acacia Research Group, LLC.

3

relevant Acacia documents "soon" is small comfort; it makes a mockery of the Court's discovery rules.

On June 11, 2014, after ALU filed this motion, Adaptix produced approximately 3 *million* additional pages of documents to ALU.[4] Notably, Adaptix had long ago produced these documents to other defendants, and it offered no justification for failing to produce the documents to ALU sooner. And since Adaptix marked these documents "Highly Confidential— Outside Attorney's Eyes Only" under the protective order, the other defendants were unable to share this production with ALU. Acacia cannot in good faith claim that it met its discovery obligations by handing off its document production responsibilities to Adaptix.

Acacia also complains that ALU has not adequately explained why its requested documents are relevant. This argument is both factually incorrect and a red herring. The parties held a lengthy meet-and-confer in which ALU explained relevance in the context of an amicable "horse-trade"—ALU agreed that it would narrow some requests and Acacia agreed to search for documents in those narrower categories. In short, the parties had worked through Acacia's relevance objections.[5] The problem is that this meet-and-confer agreement led nowhere. Ultimately, Acacia reneged and—as it now apparently concedes—conducted no search whatsoever. In any event, the issue is not whether the Acacia documents are relevant per se, but whether they are discoverable; *i.e.*, whether they are reasonably calculated to lead to the

---

[4] It appears that the text files in that production do not match the "native" files, meaning that it is not possible for ALU to perform meaningful word searches through this production. ALU has asked Adaptix to provide replacement text files to allow ALU to perform searches.

[5] See Ex. C at 1, attached to ALU's Emergency Motion to Compel Documents from Third Party Acacia Research Group, LLC ("During the call, we discussed . . . (1) topics that Acacia will search for and produce non-privileged documents").

discovery of admissible evidence.[6] If these documents truly are not discoverable, and Acacia is asserting relevance as a basis for withholding, then why is Acacia relying upon Adaptix to produce them? Acacia cannot have it both ways.

Acacia also objects to ALU's request for documents relating to a particular agreement between Acacia and Nokia Siemens Networks, arguing: (1) these documents fall outside the document production categories in ALU's subpoena; and (2) these documents are irrelevant in any event. Acacia Opp. Br. at 8-10. After the motion was filed, Nokia Siemens Network produced these documents to ALU in response to ALU's subpoena to that company. Now that ALU is in possession of these documents, it is clear to ALU that Acacia's relevance objection was frivolous. However, this issue is now moot, and ALU withdraws its request for Acacia to produce these documents.

Acacia also seems to believe that it is entitled to special protection from discovery burdens because it a "nonparty." Acacia Opp. Br. at 5-8. It quotes a California district court case for the proposition that one should not burden a nonparty for documents that already are in the possession of another party. Acacia Opp. Br. at 6 (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). The *Nidec* case does not help Acacia.

In *Nidec*, a plaintiff in a patent infringement action subpoenaed a nonparty that allegedly possessed some documents reflecting the defendants' valuation of the disputed patents. The nonparty was unrelated to any party in the case and had no interest in the litigation. Moreover, the disputed documents were defendants' documents, which reflected the defendants' assessment of the patents at issue. *Id*. The defendants allegedly had shared these assessments with a nonparty that was bidding on some stock shares. Among other things, the court there found that

---

[6] Fed. R. Civ. P. 26(b)(1).

the plaintiff could more easily obtain the defendants' own documents from the defendants themselves. *Id.* The present case is different. ALU did not ask Acacia (a nonparty) to produce Adaptix documents. On the contrary, ALU asked Acacia for Acacia documents. Acacia gave Adaptix "equal custody"[7] of these documents and now claims that ALU cannot ask Acacia for Acacia documents (even though Adaptix has failed to make a full and timely production). Moreover, unlike the *Nidec* nonparty, Acacia is not a disinterested bystander to the litigation, and is not entitled to any of the discovery deference that the law confers upon disinterested third parties.

Finally, Acacia complains that ALU has failed to satisfy the local rule requiring parties to meet-and-confer before filing discovery motions. Acacia Opp. Br. at 10-11. First, it complains that ALU failed to confer with Acacia's "lead counsel." This argument is specious. ALU contacted Acacia and scheduled a meet-and-confer at a mutually convenient time. Acacia did not have its lead counsel attend the call. Acacia cannot send a lone associate into a pre-scheduled meet-and-confer and then complain that the other side failed to confer with its "lead counsel."

Acacia also seems to complain that ALU jumped the gun with this motion because Acacia allegedly wanted to continue discussing the issues, even while it refused to produce a single page to ALU. As Acacia construes the local rule, a nonparty can avoid document subpoenas indefinitely by: (1) staffing its Local Rule 7(h) conference with someone other than lead counsel; and (2) by denying the existence of an impasse, while at the same time refusing to produce a single document. Acacia violates the letter and the spirit of the rule.

---

[7] Adaptix Opp. Br. at 1.

6

DATED: June 23, 2014            Respectfully submitted,

By: */s/ Trey Yarbrough*
Trey Yarbrough (Bar No. 22133500)
YARBROUGH WILCOX, PLLC
100 E. Ferguson Street
Suite 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Edward H. Rice (*pro hac vice*)
Jeffery M. Cross (*pro hac vice*)
Marina N. Saito (*pro hac vice*)
Richard T. Kienzler (*pro hac vice*)
FREEBORN & PETERS LLP
311 S. Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Fax: (312) 360-6520

ATTORNEYS FOR
ALCATEL-LUCENT USA INC.

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 23rd day of June, 2014. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

                                                                         */s/ Trey Yarbrough*
                                                                         Trey Yarbrough