## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC., § | | |
| § | Case Nos. 6:12-cv-22, -122, -123 | |
| Plaintiff, § | | |
| § | | |
| v. § | | |
| § | | |
| ALCATEL-LUCENT USA, INC., *et al.*, § | | |
| § | | |
| Defendants. § | JURY TRIAL DEMANDED | |
| § | | |

| | | |
|---|---|---|
| ADAPTIX, INC., § | | |
| § | Case No. 6:12-cv-00369 | |
| Plaintiff, § | | |
| § | | |
| v. § | | |
| § | | |
| T-MOBILE USA, INC., § | | |
| § | | |
| Defendant. § | JURY TRIAL DEMANDED | |
| § | | |

**SUR-REPLY OF ADAPTIX IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF INDEFINITENESS OF THE '172 PATENT**

1. <u>Defendants Attack the Court's Claim Construction.</u>

During the Markman process, Defendants did not argue that these claims were indefinite. Defendants did not argue, as they are now arguing, that the patent fails "to provide reasonable certainty to those of skill in the art regarding whether a given logical unit of subcarriers falls into" the classification of "coherence cluster," as opposed to "diversity cluster." Rather, Defendants argue that, "as construed by the Court," the claims are now indefinite.

During the Markman process, Adaptix offered a fairly precise construction of "coherence cluster," as one having subcarriers "close together such that the channel response is roughly the same." Since a person of skill in the art would know the typical channel response for a given system in context (i.e. having some basic parameters of the system). Defendants could not – and did not – argue that Adaptix's construction would lead to indefiniteness. (Indeed, they could not, as their own proposed construction (a coherence cluster consisted of subcarriers "close together") was looser.)

As it turned out, the Court did not adopt either proposed construction. Instead, it defined "coherence cluster" as having subcarriers "*relatively* close together, as compared to the subcarriers of a diversity cluster" (emphasis added). That definition does not explicitly relate the dividing line, between coherence and diversity clusters, to any physical standard.

On this motion, Defendants have attacked the Court's construction (specifically, its adding "relatively") as having introduced unacceptable ambiguity into the claims. Essentially, they argue that, under the Court's construction, although the narrowest cluster is a coherence cluster and the broadest cluster is a diversity cluster, there is no way to classify the clusters that fall between those extremes. Acampora Decl., ¶¶ 20-21; Def. Br. at 8-9.  They point out that the subcarriers of *all* intermediate clusters are "relatively close together," as compared to the subcarriers of the broadest cluster, and "relatively far apart," as compared to the subcarriers of the narrowest cluster.

Adaptix has responded in two ways. First, it has defended the Court's construction as sufficiently definite, because a person of skill in the art would understand "relatively close together," in the context of the written disclosure of the patent, as having subcarriers that span a frequency range likely within the coherent bandwidth, i.e., close enough together such that the

channel response is likely to be roughly the same (Opp. at 12). Secondly, it has defended the Court's prerogative to interpret its construction, where called for (Opp. at 4).

> 2. <u>Defendants' Argument Ignores Both the Specification and How a Skilled Artisan Would Understand the Construction.</u>

Defendants argue that under the Court's construction, in determining whether a cluster is a coherence cluster, all that matters is relativeness. As Defendants would have it, one can ignore the absolute distance separating the outer subcarriers of a cluster. They argue that the Court's construction would allow one to classify as a coherence cluster one with a bandwidth well beyond – perhaps a multiple of – a bandwidth for which the channel response of its subcarriers would likely remain roughly the same, as long as there is another, broader cluster.

But a person of skill in the art, after reading the patent's specification, would scarcely agree. Notwithstanding that the construction includes "relatively," a person of skill in the art, having read the patent, would give "close" in the Court's construction the same meaning that the patentees gave it.

Defendants' argument assumes that "close" in the Court's construction bears no relationship to how one of ordinary skill in the art would interpret that term, despite the patent's explicit definition of the term. Precedent, however, rules otherwise. *See Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 973 (Fed. Cir. 1995) (*en banc*) ("claims must be read in view of the specification, of which they are a part"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*) ("[T]he specification acts as a dictionary when it expressly defines terms used in the claims.")  And *Nautilus, Inc. v. Biosig Instruments, Inc,* __ U.S.. __ (June 2, 2014), upon which Defendants base their motion, states: "[D]efiniteness is to be evaluated from the perspective of someone skilled in the relevant art" and "in assessing definiteness, claims are to be read in light of the patent's specification and prosecution history." (Slip op. at 8)

3

The term "close," in the context of coherence clusters of subcarriers, clearly bears a relationship to the coherence bandwidth. The name "***coherence*** cluster" itself tells us this. Initially, the specification provides examples of subcarriers that are close: subcarriers that are "close" are "preferably within the channel coherence bandwidth[.]" '172 patent at 14:31-37. Later, the specification explicitly defines terms by saying that when subcarriers are close, they are "likely within the coherent bandwidth of the channel fading." Id. at 15:3-6. That is not to say that the coherence bandwidth forms a precise limit. Certainly, a person of skill in the art may, in an appropriate context, perhaps regard as a coherence cluster one with a bandwidth slightly larger. But, "the definiteness requirement must take into account the inherent limitations of language. … Some modicum of uncertainty, the Court has recognized, is the 'price of ensuring the appropriate incentives for innovation'…. [A]bsolute precision is unattainable." *Nautilus* (Slip Op. at 9, 11).

The Court's construction must be applied in context — not in a vacuum, as Defendants prefer.

    3.   <u>The Court's Construction Resolves Dr. Acampora's Examples.</u>

Defendants argue that Adaptix's interpretation of the Court's construction would still leave the claim's scope ambiguous. Defendants claim that, under Adaptix's interpretation, a person of ordinary skill in the art cannot determine how to classify the clusters in the three examples Dr. Acampora raised in support of the motion. But Defendants misstate that interpretation.

In all three of Dr. Acampora's examples, one of skill in the art would first ascertain which of the "clusters" (green, blue, or red) have outer subcarriers that are close enough that they are likely within the coherence bandwidth. Under the Court's construction, the clusters with

outer subcarriers that are close in this context (i.e. likely within the typical coherence bandwidth that would be experienced by a user) – it might be all of them - are coherence clusters; the remaining clusters, if any, are not.

In explaining his examples, Dr. Acampora confuses by mixing up clusters with what he refers to as "groups of subcarriers" within clusters. As explained in the Opposition (Opp. at 6, n.4), the patent defines "close" and "far" as relating to the distance (in frequency) between the outermost subcarriers of the *cluster,* not of groups within the cluster.

    4.  <u>The Court May Clarify Its Constructions, As It Sees Fit.</u>

Adaptix does not ask this Court to narrow its construction in order to preserve the validity of the claims. This Court may, however, if it sees fit, decide to clarify its construction to address the issues this motion raises. Courts frequently, and properly, engage in a rolling construction, where new, and previously unforeseen issues, arise. *Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) (*quoting Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005)) ("district courts may engage in a rolling claim construction in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").[1]

Here, the Court may decide to clarify its instruction, to resolve issues that have newly arisen, in order to avoid problems not earlier foreseen. But ADAPTIX submits to a person of skill in the art the claims are clearly not indefinite.

---

[1] See J. Mudd, *To Construe or Not to Construe: At the Interface Between Claim Construction and Infringement in Patent Cases*, 76 Mo. L. Rev. 709, 719 (discussing the problem of "metaconstruction" which can result when a claim construction needs to be revisited in a case).

## CONCLUSION

The Court's construction, properly interpreted, does not make the claims indefinite. In any event, if at any point the Court wishes to clarify its claim construction in order to address any of the issues raised, it may do so.

Dated:  December 2, 2014    ADAPTIX, INC.

By:  /s/ *Paul J. Hayes*
Paul J. Hayes
Steven E. Lipman
**HAYES MESSINA GILMAN & HAYES LLC**
200 State Street, 6th Floor
Boston, MA 02109
Tel:  (617) 345-6900
Fax:  (617) 443-1999
Email:  phayes@hayesmessina.com
Email:  slipman@hayesmessina.com

Craig Tadlock
Texas State Bar No. 00791766
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, TX 75093
Tel: (903) 730-6789
Email: craig@tadlocklawfirm.com

**ATTORNEYS FOR ADAPTIX, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with the Local Rule CV-5 on December 2, 2014.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

      /s/     Anthony L. Miele