IN THE UNITED STATES DISTRICT COURT

OF THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ADAPTIX, INC. | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 6:12-cv-22 |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

| ADAPTIX, INC. | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 6:12-cv-122 |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

| ADAPTIX, INC. | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 6:12-cv-123 |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

## ORDER

The above-referenced causes of action were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court:

**Defendants' Motion to Exclude Evidence and Opinions (Docket Entry #s 330, 329, & 303).**

The Court, having reviewed the relevant briefing, is of the opinion the motion should be **DENIED**.

**I.  DEFENDANTS' MOTION TO EXCLUDE**

In their motion, Defendants ask the Court (1) to preclude Adaptix from offering testimony regarding a purchase agreement between Acacia Research Group ("Acacia") and Nokia Siemens Networks ("NSN") and Adaptix's internal valuations of its patent portfolio; and (2) to exclude Adaptix's damages expert's testimony based on withheld discovery pertaining to this evidence. According to Defendants, Adaptix and its parents company, Acacia, withheld discovery related to Adaptix's damages position, specifically shielding itself from discovery related to the NSN purchase agreement and Adaptix's internal valuations.

**II.  THE NSN PURCHASE AGREEMENT**

Defendants' expert identified a license between Adaptix and NSN (the "NSN license") as the most comparable license for determining a reasonable royalty that would result from a hypothetical negotiation between Adaptix and Defendants with respect to the asserted patents. To distinguish the NSN license and opine it is not comparable, Adaptix's damages expert Mr. Green asserts the NSN purchase agreement was negotiated with the NSN license, affecting the terms of that license. Defendants argue Adaptix and Acacia prevented discovery regarding the NSN purchase agreement, and Mr. Green should be precluded from relying on the NSN purchase agreement in his opinion.

Specifically, Defendants assert they had to obtain the NSN purchase agreement from NSN because neither Adaptix nor Acacia produced it. In 2014, Defendant Alcatel-Lucent USA, Inc. ("ALU") moved to compel production of the NSN purchase agreement from Acacia, as well as testimony on the NSN purchase agreement from an Acacia representative. That motion was pending when Adaptix and Acacia presented Mr. Dodd as a corporate witness for both entities. According

to Defendants, Adaptix and Acacia instructed Mr. Dodd not to answer Defendants' questions about the NPN purchase agreement. Adaptix/Acacia also opposed Defendants' motion to compel, arguing the NPN purchase agreement was not relevant. The Court denied ALU's motion to compel testimony on the NSN purchase agreement.[1]

Defendants assert Adaptix's damages expert Mr. Green later testified that his opinion that the NSN license is not a comparable license is based on conversations with Mr. Dodd, who apparently told him the NSN purchase agreement did affect the terms of the NSN license. (Green Tr. at 67:19-68:9, 69:10-16). According to Defendants, Mr. Green's primary basis for distinguishing Defendants' expert's reasonable royalty analysis is based on the NSN purchase agreement, the same purchase agreement Adaptix/Acacia refused to produce, argued was not relevant, and instructed Mr. Dodd not to answer questions about.

In response, Adaptix states Mr. Green's opinion about the effect of the NSN purchase agreement on the NSN license is based on the simultaneous execution and terms of the two agreements. Adaptix argues the information underlying Mr. Green's opinion was equally available to Defendants during discovery as it was either in Defendants' own possession, a matter of public knowledge, or readily obtainable during discovery. Specifically, Mr. Green suggests the timing strongly suggests the purchase agreement affected the license terms, and the timing of the agreements is a publicly available fact. Adaptix states Mr. Green also relies on the terms of the purchase agreement to show the NSN license is not an ordinary one, but is "part of a complex business

---

[1] Although the Court declined to bar Adaptix and its damages expert from referring to, or in any way relying upon, the NSN purchase agreement or any related information withheld from ALU, the Court stated to the extent a specific issue arises, ALU may raise the issue with the Court at that time. (Cause No. 6:12cv22, Docket Entry #237 at pg. 4, n.2).

arrangement." (Docket Entry # 342 at 4). Defendants do not deny they have had the NSN purchase agreement since well before the close of discovery.

According to Adaptix, it has not prevented Defendants from taking discovery on the relationship between the NSN purchase agreement and NSN license. For example, Adaptix relies on deposition testimony from Matthew Vella, Acacia's CEO, asserting he was willing to discuss the NSN purchase agreement, specifically in the context of the concurrent NSN license negotiations; yet, Defendants made no attempt to follow up on Mr. Vella's testimony about the agreement. According to Adaptix, Defendants just abandoned the line of questioning.

Precluding Mr. Green from relying on the NSN purchase agreement in his report is not warranted, especially considering Defendants have in their possession the NSN purchase agreement and further considering the Court recently ordered Adaptix to produce to ALU an unredacted copy of Mr. Green's report from the ITC Investigation.

### III. ADAPTIX'S INTERNAL VALUATIONS OF THE ADAPTIX PORTFOLIO

Defendants also request Mr. Green be precluded from relying on Adaptix's internal valuations in forming his damages opinions. According to Defendants, Adaptix shielded itself from discovery into its damages opinions by denying it had any valuation opinions on the patents in the Adaptix portfolio. Specifically, Mr. Dodd testified Adaptix and Acacia had not allocated value to specific patents in the portfolio and had not valued the patents by patent family either. However, according to Defendants, Mr. Green has now testified Mr. Dodd and Adaptix did have opinions on the value of individual patents and families in the portfolio. Specifically, Mr. Green testified Mr. Dodd told him that the asserted patents constitute "virtually all" of the value of the Adaptix patent portfolio.

According to Adaptix, there is no contradiction between Mr. Dodd's testimony that he was unaware of specific internal valuations performed by Adaptix/Acacia that allocated the total value of the Adaptix portfolio down to patent families and specific patents and Mr. Green's reliance on informal opinions from Acacia that deem the asserted patents to be of critical value to the Adaptix portfolio. Adaptix continues to represent the internal valuations Defendants complain Mr. Dodd could not identify do not exist, and are entirely different from, the informal opinion relied upon by Mr. Green. Additionally, Adaptix asserts the informal opinions as to the critical nature of the asserted patent families were made known to Defendants long before Mr. Green's deposition, having been described in detail by Mr. Vella during his deposition in the ITC Investigation, the transcript of which was produced to ALU in July of 2014. According to Adaptix, nothing prevented Defendants from asking Mr. Vella about his previous deposition testimony, and they also failed to address these issues in Mr. Green's deposition.

Again, the Court finds no reason to preclude Mr. Green from relying on informal internal patent valuations about the importance of the asserted patents. The Court is unpersuaded that Mr. Dodd's testimony regarding this issue contradicted that of Mr. Green or that is prevented Defendants from seeking testimony about this issue from Mr. Green and Mr. Vella. Accordingly, it is

**ORDERED** Defendants' Motion to Exclude Evidence and Opinions (Docket Entry #s 330, 329 & 303) is **DENIED.**

**SIGNED this 19th day of June, 2015.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE