# IN THE UNITED STATES DISTRICT COURT
# OF THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| **V.** | § § | **No. 6:12-CV-22** |
| **ALCATEL-LUCENT USA, INC., ET AL.** | § § § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| **V.** | § § | **No. 6:12-CV-122** |
| **ALCATEL-LUCENT USA, INC., ET AL.** | § § § | |

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § § | |
| **V.** | § § | **No. 6:12-CV-123** |
| **ALCATEL-LUCENT USA, INC., ET AL.** | § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cases were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Before the Court is the following pending motion:

**Defendants' Motion for Summary Judgment of Non-Infringement of the '808 Patent (Cause No. 6:12cv22, Docket Entry # 274)(Cause No. 6:12cv122, Docket**

**Entry # 270)(Cause No. 6:12cv123, Docket Entry # 248).**

Having considered the relevant briefing and having heard arguments of counsel on June 2, 2015, the Court recommends the motion be **DENIED**.

## I.
## BACKGROUND

Plaintiff Adaptix, Inc. ("Adaptix") has brought suit alleging infringement of United States Patents No. 6,870,808, 6,904,283, 7,072,315, 7,146,172, and 7,573,851 (collectively, the "patents-in-suit"). The present Motion for Summary Judgment pertains to only United States Patent No. 6,870,808 ("the '808 Patent").

In general, the patents-in-suit relate to wireless communications, such as for cellular telephones. The '808 Patent is titled "Channel Allocation in Broadband Orthogonal Frequency-Division Multiple-Access/Space-Division Multiple-Access Networks." The Court construed various terms in the patents-in-suit, including the '808 Patent, in a Memorandum Opinion and Order entered February 26, 2014. Cause No. 6:12cv22, Docket Entry # 141.[1] Of relevance here, the Court construed "broadband spatial signature vectors" to mean "two-dimensional matrices, or sets of vectors, that represent spatial characteristics of multiple channels." *Id.* at 44-58.

## II.
## STANDARDS

The Court uses familiar standards to resolve Defendants' motion for summary judgment. Summary judgment is appropriate when the movant is able to demonstrate that the pleadings,

---

[1] For convenience, the Court cites docket entry numbers for only Cause No. 6:12cv22 unless otherwise indicated.

affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Defendants, as the movants, bear the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). If Defendants meet that burden, Adaptix must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

### III.

### THE PARTIES' POSITIONS

Defendants argue Adaptix has failed to raise a genuine issue of material fact as to whether the accused instrumentalities meet the "broadband spatial signature vectors" limitation of all of the asserted claims of the '808 Patent, namely Claims 1, 2, 4, and 13.

Defendants argue Adaptix's reliance upon sub-band CQI (Channel Quality Indicator) values in a "Mode 3-1" report is insufficient because Adaptix has not shown that those values are calculated based upon the Rank Indicator (RI), which Adaptix purportedly relies upon and which represents the number of spatially separated channels that a particular subscriber can discern. Moreover, Defendants argue the asserted claims of the '808 Patent are limited to SDMA (Space Division Multiple Access) protocols. Defendants explain that "in this case, Adaptix has asserted the '808 patent against networks that do not employ SDMA, which is a technique where *multiple* subscribers (e.g., handsets or cell phones) can communicate with a base station using the same frequency channel at the same time if the *subscribers* are spatially separated." Cause No. 6:12cv22, Docket Entry # 274 at 2. Defendants urge that "[n]ow, in an attempt to read the '808 patent on technology

that is not SDMA, Adaptix is contorting the Court's construction to encompass any value with an alleged spatial aspect." *Id.* Defendants conclude that Adaptix cannot show that the sub-band CQI values meet the Court's construction of "broadband spatial signature vectors" because "[t]he sub-band CQI values do not allow a base station to determine whether two subscribers are separated such that the base station can communicate with both subscribers using the same frequency at the same time using different spatial channels." *Id.* at 13.

Likewise, Defendants argue that Adaptix's reliance upon the entire Mode 3-1 report (which includes CQI and RI as well as PMI (Precoding Matrix Indicator), which indicates how spatially separated channels are mapped onto antenna ports) should be rejected because the included values "do not allow a base station to determine whether it can communicate with more than one subscriber using the same frequency at the same time using different spatial channels, and therefore, none of them, alone or in any combination, constitutes a broadband spatial signature vector." *Id.* at 14.

Adaptix responds that "Defendants try to get a second bite at the claim-construction apple by reading into this Court's construction of the term 'broadband spatial signature vectors' a requirement that such broadband spatial signature vectors enable the base station to communicate with 'multiple subscribers' using the same frequency at the same time." Cause No. 6:12cv22, Docket Entry # 299 at 1. Adaptix cites opinions of its expert, Dr. Jonathan Wells, that sub-band CQI values represent spatial characteristics of multiple channels, and Dr. Wells further opines that a Mode 3-1 report is representative of the frequency and spatial characteristics associated with a subscriber unit.

In reply, Defendants reiterate that Adaptix "ignores the most fundamental aspect of the '808 patent: the ability to communicate with *multiple subscribers* at the same time using the same

frequency channel if the subscribers are spatially separated." Cause No. 6:12cv22, Docket Entry # 318 at 1.

In sur-reply, Adaptix submits that "no such limitation is included in the Court's construction of the relevant claim terms and . . . the '808 patent covers the broader concept of spatial multiplexing." Cause No. 6:12cv22, Docket Entry # 325 at 1.

## IV.

## ANALYSIS

The parties' arguments have presented a claim construction dispute, and "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The claims at issue are Claims 1, 2, 4, and 13. Claims 2, 4, and 13 all depend from Claim 1, which recites (emphasis added):

> 1. A network comprising:
>     a base station; and
>     a plurality of subscriber units to communicate with the base station using an orthogonal frequency-division multiple-access (OFDMA) protocol;
>     the base station including
>         a memory to store *broadband spatial signature vectors* associated with each subscriber, the vectors being a function of frequency; and
>         traffic channel allocation logic to allocate OFDMA channels using the *broadband spatial signature vectors* of the subscribers.

The Court's February 26, 2014 Memorandum Opinion and Order construing the disputed term (in the manner noted above) sets forth no requirement that "broadband spatial signature vectors" must use SDMA (Space Division Multiple Access) or otherwise must determine spatial

5

separation between multiple subscribers. *See* Cause No. 6:12cv22, Docket Entry # 141 at 44-58. Further, no such requirement is evident from the claim language or the written description of the '808 Patent.

Instead, the requirement proposed by Defendants is a specific feature of particular embodiments and should not be imported into the claims. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments.").

The Court therefore expressly rejects Defendants' interpretation that "broadband spatial signature vectors" must enable determining spatial separation between multiple subscribers. Because Adaptix has presented sufficient evidence to raise genuine issues of material fact as to whether a Mode 3-1 report, and the use of CQI and RI, meet the "broadband spatial signature vectors" limitation, Defendants' motion for summary judgment should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendants' Motion for Summary Judgment of Non-Infringement of the '808 Patent (Cause No. 6:12cv22, Docket Entry # 274)(Cause No. 6:12cv122, Docket Entry # 270)(Cause No. 6:12cv123, Docket Entry # 248) be **DENIED.**

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 19th day of June, 2015.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE